# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ADILSON DE OLIVEIRA, et.al.,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**E ANDRE CONSTRUCTION SERVICES, INC., et al.,**<br><br>     **Defendants.** | **Civil Case No.: 3:22-cv-06330** |

## JOINT MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT

**JAFFE GLENN LAW GROUP, P.A.**
Andrew I. Glenn, Esquire
E-mail:  Aglenn@jaffeglenn.com
Jodi J. Jaffe, Esquire
E-mail: Jjaffe@jaffeglenn.com
300 Carnegie Center, Suite 150
Princeton, NJ 08540
Telephone: (201) 687-9977
*Attorney for Plaintiffs*

**LITTLER MENDELSON**
Lauren J. Marcus, Esq.
Email:  Lmarcus@littler.com
Dimitrios T. Markos, Esq.
Email: dmarkos @littler.com
One Newark Center,
8th Floor.
Newark, NJ 07102
Telephone: (973) 848-4700
*Attorneys for the Defendants*

# TABLE OF CONTENTS

<strong>PAGE</strong>

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

I.   FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

II.  SUMMARY OF THE SETTLEMENT TERMS ........................................................ 5

    A.   Plaintiffs' Compensation and Opt-In Procedure ........................................... 6

    B.   Attorneys' Fees, Litigation Costs, And Service Awards ............................... 8

    C.   Timing of Payments ...................................................................................... 8

III. SETTLEMENT PROCEDURE ................................................................................. 9

    A.   This Court Should Certify This Action as a Class and Collective Action Pursuant to Rule 23 and 29 U.S.C. § 216(b) For Settlement Purposes Only ................................. 9

        1.   Rule 23 Elements Are To Be Liberally Construed ............................. 9

        2.   The Class Is So Numerous That Joinder Of All Members Is Impracticable .............. 10

        3.   Commonality -- The Claims Of Each Member Of The Putative Class Arise From An Alleged Common Wrong ................................. 11

    B.   Predominance ............................................................................................... 13

        1.   The Named Plaintiff's Claims Are Typical Of The Claims Of The Putative Class ............................. 13

        2.   The Named Plaintiff Will Fairly And Adequately Protect The Interests Of The Class ............................. 15

        3.   A Class Action Is Superior To Other Available Methods ................. 16

    C.   The FLSA Collective Should be Certified for Settlement Purposes Only .......... 16

    D.   Applicable Case Law Supports that the Action Be Certified for Settlement Purposes Only. .............................................................................. 17

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................... 18

    A.   The Settlement Is Non-Collusive, Fair, Reasonable, And Adequate ......... 19

    B.   Litigation Through Trial Would Be Complex, Costly, And Long (*Girsh* Factor 1) ................ 21

    C.   The Reaction Of The Class Has Been Positive (*Girsh* Factor 2) ................ 21

    D.   Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (*Girsh* Factor 3) ...................................... 22

    E.   Plaintiffs Would Face Real Risks If The Case Proceeded (*Girsh* Factors 4 And 5) ................ 22

    F.   Risks Involved In Maintaining The Class Through Trial (*Girsh* Factor 6) ............................ 23

    G.   Defendants' Ability To Withstand A Greater Judgment Is Not Determinative (*Girsh* Factor 7) ................................ 23

    H.   The Settlement Fund Is Substantial, Even In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Girsh* Factors 8 And 9) ................ 24

# TABLE OF CONTENTS
(CONTINUED)

**PAGE**

V.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE ............................. 25

VI.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ...................................................... 26

CONCLUSION ............................................................................................................................................ 27

.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................... 16

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ...................................................................................... 19

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ...................................................................................... 14

*Barone v. Safway Steel Prods., Inc.*,
    2005 U.S. Dist. LEXIS 17645 (E.D.N.Y. 2005) ...................................................... 18

*Bernhard v. TD Bank, N.A.*,
    2009 U.S. Dist. LEXIS 92308 (D.N.J. 2009) .................................................... 11, 19

*Bizzarro v. Ocean Cnty.*,
    2009 U.S. Dist. LEXIS 48354 (D.N.J. 2009) ........................................................... 10

*Bredbenner v. Liberty Travel, Inc.*,
    2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011) ........................................... 11, 13, 17, 20

*Brzychnalski v. Unesco, Inc.*,
    35 F. Supp. 2d 351 (S.D.N.Y. 1999) ........................................................................ 18

*Bulba v. Tunstall Holdings, LLC, et.al.*,
    14-00746 (E.D.N.Y. May 26,2015) ........................................................................... 15

*In re Bulk [extruded] Graphite Prods. Antitrust Litig.*,
    2006 U.S. Dist. LEXIS 16619 (D.N.J. 2006) ........................................................... 11

*Cabrera v. Penn-Del Baking Distribs., Inc., et.al.*,
    13- cv-4805 (D.N.J. May 26, 2015) .......................................................................... 15

*Cirillo v. Patriot Elec. Corp.*,
    15-cv-03770 (E.D.N.Y. May 17, 2016) .................................................................... 15

*Clarke v. Flik Int'l Corp.*,
    2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020) .............................................. 20

*Colon v. Passaic Cnty.*,
    2009 U.S. Dist. LEXIS 45151 (D.N.J. 2009) ........................................................... 11

*Cruz v. Majestic Cleaning*,
    Index No. 511791/2017 ............................................................................................. 15

*Davis, et al. v. Essex Cnty.*,
    14-cv-01122 (CCC)(JNC) (N.J. Dec. 1, 2015) ....................................................... 15

*Deangelis v. Bally's Park Place, Inc.*,
    298 F.R.D. 188 (D.N.J. 2014) ................................................................................... 17

*Dorn v. Eddington Sec., Inc.*,
    No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ........................... 22

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir.2010) ................................................................................ 18, 21

i

*Epstein v. Moore*,
   1988 U.S. Dist. LEXIS 5450 (D.N.J. 1988)..........................................................................11

*Friscia v. Doherty Enter., Inc., d/b/a Panera Bread Co.*,
   Index No. 16-cv-3754 (D.N.J. Jun. 26, 2018)....................................................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).................................................................................................18

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir.1975)..........................................................................................*passim*

*Goldman v. Radioshack Corp.*,
   2005 U.S. Dist. LEXIS 8742 (E.D. Pa. 2005)....................................................................18

*Gortat v. Capala Brothers, Inc.*,
   2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. 2010)................................................................18

*Grenawalt v. AT&T Mobility, LLC*,
   2014 U.S. Dist. LEXIS 139179 (S.D.N.Y. 2014) ..............................................................18

*Hall v. Best Buy Co.*,
   274 F.R.D. 154 (E.D. Pa. 2011)........................................................................................17

*Hebert, et.al. v. Atl. Cnty.*,
   13-cv-04170 (D.N.J. Dec. 7, 2015)....................................................................................15

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008).........................................................................................9, 13

*Jones v. SCO, Silver Care Operations LLC*,
   2014 U.S. Dist. LEXIS 151089 (D.N.J. 2014)....................................................................9

*Knepper v. Rite Aid Corp.*,
   675 F.3d 249 (3d Cir. 2012)................................................................................................9

*Lenahan v. Sears, Roebuck & Co.*,
   No. CIV. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006) *aff'd*, 266 F. App'x 114 (3d
   Cir. 2008) ..........................................................................................................................24

*In re Lucent Tech., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ...................................................................................19

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d
   1062 (3d Cir. 1988) ...........................................................................................................17

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982)....................................................................................2, 20

*Martina v. L.A. Fitness Int'l, Inc.*,
   2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013) ......................................................19

*Mazon v. Wells Fargo Bank, N.A.*,
   No. CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *1 (D.N.J. ...............................19, 25

*McGee v. Ann's Choice, Inc.*,
   2014 U.S. Dist. LEXIS 75840 (E.D. Pa. June 4, 2014) ......................................................1

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003)............................................................................................11

*Neal v. Casey*,
 43 F.3d 48 (3d Cir. 1994)..................................................................................... 11

*Opperman v. Allstate N.J. Ins. Co.*,
 2009 U.S. Dist. LEXIS 111733 (D.N.J. 2009).................................................... 10

*Osgood v. Harrah's Ent., Inc.*,
 202 F.R.D. 115 (D.N.J. 2001) ............................................................................ 10

*Perez v. Ames Goldsmith*,
 MID-L-005291-17 (NJ Super. Law Div. 2018) .................................................. 15

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985).......................................................................................... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
 148 F.3d 283 (3d Cir. 1998) ............................................................................. 18

*Rodriguez v. Parade Mgmt. Corp, et al.*,
 19-cv-00223 (ES) (SCM) (D.N.J. Dec. 7, 2020) .............................................. 15

*Scales v. We R Wireless, Inc., et.al.*,
 14-cv-03322 (D.N.J. Nov. 2, 2016) .................................................................. 15

*In re Schering Plough Corp. ERISA Litig.*,
 589 F.3d 585 (3d Cir. 2009) ............................................................................. 14

*In re School Asbestos Litig.*,
 789 F.2d 996 (3d Cir. 1986) ............................................................................. 12

*Schwartz v. Avis Rent a Car Sys., LLC*,
 2014 U.S. Dist. LEXIS 121322 (D.N.J. 2014)................................................... 13

*Singleton v. First Student Mgmt. LLC*,
 2014 U.S. Dist. LEXIS 108427 (D.N.J. 2014)............................................. 13, 18

*Singleton v. First Student Mgmt. LLC*,
 No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ............ 23, 24

*Siyam v. SS&C*,
 19-cv-18535 (MAS) (DEA) (D.N.J. July 28, 2020) .......................................... 15

*Smith v. Prof'l Billing & Mgmt. Servs.*,
 2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007)...................................... 19

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011).............................................................................. 10

*Velez v. Majik Cleaning Serv., Inc.*,
 2005 WL 106895 (S.D.N.Y. 2005).................................................................... 18

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004)............................................................... 11, 18, 22

*Weber v. Gov't Emps. Ins. Co.*,
 262 F.R.D. 431 (D.N.J. 2009)..................................................................... 22, 24

*Weikel v. Tower Semiconductor, Ltd.*,
 183 F.R.D. 377 (D.N.J. 1998) ........................................................................... 10

*Wetzel v. Liberty Mut. Ins. Co.*,
 508 F.2d 239 (3d Cir. 1975) ............................................................................. 15

**Statutes**

28 U.S.C. § 1715(d) ............................................................................................................... 27

FLSA, 29 U.S.C. § 216(b) ............................................................................................. 2, 9, 17

N.J.S.A. § 34:11-56a, *et. seq.* ................................................................................................. 2

N.J.S.A § 34:11-56.25, *et. seq.* .................................................................................... 2, 3, 23

**Other Authorities**

Fed. R. Civ. P. 12(b) ............................................................................................................ 10

FED. R. CIV. P. 23 ......................................................................................................... *passim*

Fed. R.Civ. P. 23(a) ........................................................................................... 9, 10, 14, 17

FED. R. CIV. P. 23(a)(1) .................................................................................................... 9, 10

FED. R. CIV. P. 23(a)(2) ......................................................................................................... 9

FED. R. CIV. P. 23(a)(3) ....................................................................................................... 10

FED. R. CIV. P. 23(a)(4) ................................................................................................... 10, 15

Fed. R. Civ. P. 23(b) ............................................................................................................. 9

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 5, 10, 16

FED. R. CIV. P. 23(c)(2)(B) .................................................................................................. 26

FED. R. CIV. P. 23(h) ....................................................................................................... 8, 27

FED. R. CIV. P. 23(h) ............................................................................................................. 8

FED. R. CIV. P. 54(d)(2) ........................................................................................................ 8

NEWBERG § 11.25 ................................................................................................................ 20

NEWBERG § 11.41 ................................................................................................................ 18

Rule 23(c)(3) ....................................................................................................................... 26

Rule 56 ................................................................................................................................ 10

## PRELIMINARY STATEMENT

Plaintiff ADILSON DE OLIVEIRA ("Plaintiff"), on behalf of himself and all Opt-In Plaintiffs who join this case , and Defendants E ANDRE CONSTRUCTION SERVICES, INC., aka E ANDRE CONSTRUCTION SERVICES, LLC,, EDWARD ANDRE, Individually, and ELANA MATOS, Individually (collectively, "Defendants") (together, the "Parties"), submit this Memorandum in support of their Joint Motion for Preliminary Approval of their Hybrid Putative Class/Collective Action Settlement, including the form and manner of disseminating the Settlement Notice and Release, as well as the request for the scheduling of a Settlement Fairness Hearing.

The Parties, following a Mediation before mediator Michael Grosso, Esq., have reached a settlement in the maximum amount of Seven Hundred Thousand Dollars and Zero Cents ($700,000.00), subject to the approval of this Court. The terms of the settlement are set forth in the Parties' Settlement Agreement (the "Settlement Agreement"), which is attached hereto. The Settlement Agreement was the product of arm's length negotiations by counsel experienced in class and collective action wage claims.

If approved by the Court, Plaintiff and Opt-In Plaintiffs who join this action will have  the opportunity to receive substantial monetary compensation, depending on the number of  weeks they worked as construction laborers, as well as their hourly rate of pay, in New Jersey between October 28, 2016, and December 31, 2023. The Settlement eliminates the risks both sides would bear if this litigation continued.  The Parties believe the terms of the Settlement Agreement are fair and reasonable and should receive final approval at a fairness hearing following notice of this lawsuit to all putative Opt-In Plaintiffs.

Court approval of this Settlement is necessary to effectuate a valid and enforceable release of Plaintiff's and putative Opt-In Plaintiffs' FLSA claims.  *McGee v. Ann's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840, at *4-5 (E.D. Pa. June 4, 2014) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350,

1353 (11th Cir. 1982)). Where, as here, the litigation arises from a private enforcement action under the FLSA, 29 U.S.C. § 216(b), as well as state wage and hour causes of actions, the Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," and, if a settlement reflects "a reasonable compromise," the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1352-54 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)). Because the Settlement in the instant case clearly meets the applicable legal standards, the Parties respectfully request this Court's approval to send notice of this hybrid class/collective action settlement to Plaintiff and the putative Opt-In Plaintiffs (collectively "Potential Opt-In Plaintiffs") and schedule a Settlement Fairness Hearing following the notice period.[1]

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, on behalf of himself and those workers similarly situated, filed this action for unpaid overtime wages, unpaid wages, and unpaid prevailing wages, both regular and overtime compensation, on or about October 28, 2022 [DE-1]. The Complaint alleged Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the New Jersey Wage and Hour law ("NJWHL"), N.J.S.A. § 34:11-56a, *et. seq.*, the New Jersey Wage Payment Act ("NJWPA"), N.J.S.A. § 34:11-4, *et. seq.*, and the New Jersey Prevailing Wage Act ("NJPWA"), N.J.S.A. § 34:11-56.25, *et. seq.* [DE-1]. Plaintiff  claims Defendants violated the FLSA, the NJWHL, and the NJWPA,  because Defendants failed to compensate Plaintiff for all hours worked, failed to pay Plaintiff at one and one half times his regular rate of pay for all work performed in excess of forty (40) hours in a work week and further that, in violation of the NJWPA, Defendants failed to compensate Plaintiff for all hours worked at the correct

---

[1]  Although Defendants do not oppose this Motion for Certification of a settlement class, they expressly reserve the right to defend against any and all claims asserted by Plaintiff including, but not limited to, conditional certification of a Rule 23 class, final certification of a Rule 23 or FLSA collective class, as well as liability and damages, in the event the Court denies the Motion to approve the settlement.

prevailing wage plus supplemental benefit rate of pay for all of his work performed on public, government jobs.

Defendants deny all allegations set forth in the Complaint and contend that Plaintiff's class and collective action wage claims lack merit because: (1) Defendants are entitled to a statutory credit toward any alleged overtime compensation sought by Plaintiff and/or any allegedly similarly situated employees for any wages sought in this matter; (2) Plaintiff and all of those employees that are similarly situated to Plaintiff were paid for all hours worked at the proper rate of pay. Defendants also contend that Plaintiff is not similarly situated to those employees that Plaintiff asserts, and that the Rule 23 requirements cannot be satisfied here.

The Parties have been in active settlement discussions since shortly after the Complaint was filed on October 28, 2022. In the interest of avoiding further litigation and the inherent risks regarding same, the parties agreed to exchange initial and supplementary documents and information that were to be used for settlement purposes only. More specifically, Defendants produced voluminous time and payroll records, including, but not limited to, the Plaintiffs' payroll records; their pay summaries; and Defendants' weekly handwritten calendars with job and employment information. the aforementioned documents delineated most of the Plaintiffs' actual time worked, and the hours and compensation paid. Due to the transient nature of Defendants' business, although there were generally only fifteen (15) employees working at any given time, this turnover greatly increased the number of employees that worked for Defendants during the statute of limitations period in this matter.

The Parties' negotiations resulted in Defendants' agreement to Conditional Certification of a class of "All persons employed by Defendants from January 1, 2019 through December 31, 2023 as a mason, laborer or other construction related trade for Defendants. The covered period for those employees that are members of the class is October 28, 2016 through December 31, 2023. Further, the

parties agreed to the form and substance of a proposed Notice of Lawsuit ("Notice") and a Consent to Join form, filed herewith, which are to be sent to the putative class members, providing them an opportunity to join this settlement in this matter. The Notice Process is more fully set forth below.

Plaintiffs created two (2) sets of Excel spreadsheets for the years worked by Plaintiffs which, amongst other things, delineated Plaintiffs' time worked as reflected in documents provided by the Plaintiffs, as well as Plaintiffs' time worked and pay received as reflected in documents provided by Defendants. Plaintiffs had their own documents, which further assisted counsel for Plaintiffs to conduct an analysis of the damages in this matter. Extensive creation, revision, and analysis of these spreadsheets revealed significant discrepancies between the data in Plaintiffs' possession and the Defendants' data. Based upon these discrepancies, the Parties continued to disagree as to the value of the claims. Further disagreement amongst the Parties was the viability of a class. In this regard, Plaintiffs desired settlement on a class basis, while Defendants merely wanted to settle on behalf of the Named Plaintiff and the Opt-In Plaintiff. In light of the disputes regarding the value of settlement as well as the class, it was clear that the Parties needed the services of an experienced mediator to assist in attempted claim resolution.

On Wednesday, December 6, 2023, after a contentious and lengthy mediation, the Parties finally agreed to a resolution of the matter. Of note, the settlement encapsulated not only the putative class of construction workers that worked for Defendants for a three-year statute of limitations, but rather a 6-year statute of limitations for those that worked for Defendant during the three years preceding the filing of the Complaint in this matter. This is so despite the Parties' continued differences as to the nature and value of the asserted claims. Plaintiff, on the one hand, believes that the claims asserted in this action are not only meritorious – namely that Defendants failed to properly compensate him for all of the hours that he worked, at time and one half for his overtime hours worked, as well as failure to pay at the prevailing wage rate and provide for benefits

for the work that he performed on public jobs.  Further, Plaintiff alleges that if litigation were to continue, he would be able to demonstrate at a trial that Defendants acted "willfully" and that their conduct was not in "good faith." Defendants, on the other hand, strongly dispute the validity of the nature and extent of the claims asserted by Plaintiff and maintain that they, at all times, properly compensated Plaintiff for all hours worked, whether public or private jobs performed.  Defendants also maintain that at all times they acted in good faith and did not act willfully in their failure, if at all, to compensate Plaintiff properly.   Further, even assuming arguendo that Plaintiff was owed money, Defendants posited that the damages calculations set forth by Plaintiff were highly exaggerated, and that the actual amount of damages is far lower than what Plaintiff had claimed. Given the Parties' varying positions regarding their respective claims and defenses, they recognize that these disputed issues could be subjected to extended litigation. The Parties have engaged in extensive discussions, including a lengthy mediation during which they discussed and evaluated the various claims and defenses and gained a better understanding of the strengths and risks associated with their respective positions.  Although the Parties have already dedicated substantial time and resources to this litigation, the Parties anticipate spending much more time and resources should litigation continue, with both sides spending an exorbitant amount of time with motion practice and experts. In the interest of judicial economy, and because the proposed settlement is fair, reasonable and adequate, the Parties respectfully request that the Court order provisional Conditional Certification of a class under the FLSA as well as conditional certification of the settlement class under Rule 23(b)(3) for settlement purposes and grant preliminary approval of the class settlement, class notice, settlement procedure and the Parties' Settlement Agreement.  There can be no question, therefore, that the proposed Settlement is the product of vigorous litigation and arm's length negotiations.

## II.    <u>SUMMARY OF THE SETTLEMENT  TERMS</u>

While maintaining its general denial of Plaintiff's claims, Defendants have agreed to a common fund in the maximum amount of Seven Hundred Thousand Dollars and Zero Cents ($700,000.00). After subtracting the costs of administering the Settlement for a neutral, third-party administration company, (up to $25,000.00), $215,000.00 in attorneys' fees and expenses for Plaintiffs' Counsel, the Revised Gross Fund proceeds of the Settlement will be allocated as set forth in Section III(B) of the Settlement Agreement.

### A.    Plaintiffs' Compensation and Opt-In Procedure

Plaintiff and each of the Potential Opt-In Plaintiffs shall be compensated based upon a percentage of the revised gross fund, which is assigned to each class member.

All Qualified Class Members shall be paid a portion of the Gross Fund pursuant to the following allocation formula: Plaintiff and each "Class Member" that worked for E ANDRE between October 28, 2016, and December 31, 2023, shall be compensated based upon their proportional share of weeks worked and their average, weighted rate of pay.  The proportional share of weeks will be calculated as the number of weeks worked divided by the total number of weeks worked by Plaintiff and all Class Members.  Their proportional share of weeks shall be given weight based on the weighted average of pay as follows:

- If average, weighted rate of pay is less than $30.00 per hour, their number of weeks is multiplied by a factor of 1;

- If average, weighted rate of pay is at least $30.00 per hour their number of weeks shall be multiplied by a factor of 1.5;

The proposed Notice Form shall be published by first-class mail to each Class Member and shall inform him/her of: the Settlement; the claims he/she is releasing by not submitting an Opt Out request; the procedure to object to the proposed settlement, and the formula that will be used to calculate the payments to Class Members under the Settlement. The Notice Form will explain that the eventual

Participating Class Members' Final Settlement Payment will be a proportionate share of the Qualified Settlement Fund, as determined by the Claims Administrator pursuant to a formula and based on a number of factors, as described above in II.

No later than fourteen (14) calendar days after the Preliminary Approval Date, Counsel shall insure that the Notice Packet and all required information is provided to the Claims Administrator. Within fourteen (14) calendar days of receiving the Notice Packet, the Claims Administrator shall send the Notice Form and a postage-paid pre-addressed return envelope (which the Class Member may return to request an Opt Out form to the Claims Administrator by first-class mail) to each Class Member that has been identified. To join this matter, the Consent to Join Form must be post-marked via U.S. Mail or transmitted electronically via facsimile or e-mail to the Claims Administrator on or before forty-five (45) days after the Notice Packets were mailed out. Class Members will have forty-five (45) days to request exclusion from the settlement or object to the settlement. Any objections to the settlement must be in writing and filed with the Court no later than thirty (30) calendar days after the Notice is mailed. Any objection submitted to the Court thereafter will be time barred.

If a Class Member's Notice Package is returned without a forwarding address, the Claims Administrator shall attempt to determine the Class Member's current address through an electronic search. If a new address is obtained, the Claims Administrator shall promptly re-mail the Notice Package to the Class Member. Any Class Member whose Notice Package is re-mailed shall have the remainder of the forty-five (45) calendar days in the Claim Period or twenty (20) calendar days after the re-mailing of the Notice Package, whichever is longer, to submit an Opt Out form. A Reminder Notice of the litigation and the right to join, in the form of a post card to be agreed upon by the Parties, shall be mailed, in both English and Spanish, thirty (30) days after the first mailing. Should the Notice Packet mailed to any individual be returned as undeliverable, the Claims Administrator shall promptly attempt to locate the individual with one skip trace. For each re-mailed Notice, it shall be re-dated with

the date of re-mailing and shall give the individual twenty (20) days from the date of re-mailing in which to return the Consent to Join for to the Claims Administrator.

### B.     Attorneys' Fees, Litigation Costs, And Service Awards

At the Final Approval Hearing, Class Counsel will petition the Court for an award of Attorneys' Fees and costs not to exceed Two Hundred and Fifteen Thousand Dollars and Zero Cents ($215,000.00), plus Claims Administrator Fees and Costs not to exceed Twenty-Five Thousand Dollars ($25,000.00), and a Reserve Fund in the amount of Fifty Thousand Dollars ($50,000.00).  Pursuant to FED. R. CIV. P. 23(h) and 54(d)(2), Class Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiff will apply for a Service Payment for Class Representative Adilson De Oliveira as well as Opt In Plaintiff Rafael Diaz for the assistance in litigating this matter in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00).

### C.     Timing of Payments

1. The initial Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000) of the Gross Settlement Fund will be funded in seven installment payments in the amount of Sixty Thousand Dollars and Zero Cents ($60,000.00) by the final day of each month beginning in March 2024, and by the final day of each month thereafter, until September 2024.  Defendants will make one additional payment in the amount of Thirty Thousand Dollars and Zero Cents ($30,000) by the final day of October 2024.

   a)     Defendants shall make all referenced payments to the Gross Settlement Fund managed by the Claims Administrator by wire transfer to a Depository Bank chosen by the Claims Administrator.

   b)     Within seven (7) days of the Claims Deadline, the Claims Administrator shall provide notice to Defendants of the total amounts needed to satisfy all claims.

   c)     Within fifteen (30) calendar days after final approval, Defendants shall wire all of the remaining unfunded Gross Settlement Fund to the Claims Administrator.

   d)     Within 30 (30) calendar days after final approval, the Claims Administrator will transmit all Service Awards approved by the Court, as well as each Qualified Class Members' settlement payment, via first-class U.S. mail, to the last known address of the Qualified Class Member, or such other address provided by the Qualified Class Member to the Claims Administrator.

e)        Within thirty (30) calendar days of the Final Approval, the Claims Administrator shall pay to Class Counsel, via wire, the total amount of attorneys' fees and costs approved by the Court.

f)        In the event that not all funds are used to satisfy all payments as required, the remaining funds shall revert back to Defendants.

## III.    SETTLEMENT PROCEDURE

### A.    This Court Should Certify This Action as a Class and Collective Action Pursuant to Rule 23 and 29 U.S.C. § 216(b) For Settlement Purposes Only

Plaintiff respectfully requests that this Court certify this action as a class action for settlement purposes only pursuant to FED. R. CIV. P. 23 to cover Plaintiffs' New Jersey State Labor Law claims and certify a collective action to cover Plaintiffs' FLSA claims.  The Third Circuit has recognized the dual nature of these claims and has granted bifurcated certification of state law claims under Rule 23, while certifying the FLSA component of the class claims pursuant to 29 U.S.C. § 216(b). *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 261 (3d Cir. 2012) ("Jurisdiction over opt-out class action based on state-law claims paralleling the FLSA was not inherently incompatible with the FLSA's opt-in procedure."); *see also Jones v. SCO, Silver Care Operations LLC*, 2014 U.S. Dist. LEXIS 151089, at *2 n.1 (D.N.J. 2014). As demonstrated below, class certification for settlement purposes only should be granted because Plaintiffs clearly meet the elements of Rule 23. Because the Rule 23 factors are satisfied, certification of the FLSA collective is also warranted.

### 1.    Rule 23 Elements Are To Be Liberally Construed

To obtain class action certification, Plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). Rule 23 provides that one or more members of a class may sue as representative parties on behalf of a class if:

a.    the class is so numerous that joinder of all members is impracticable ["numerosity"], *see* FED. R. CIV. P. 23(a)(1);

b.    there are questions of law or fact common to the class ["commonality"], *see* FED. R. CIV. P. 23(a)(2);

    c.    the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], *see* FED. R. CIV. P. 23(a)(3);

    d.    the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"], *see* FED. R. CIV. P. 23(a)(4); and

    e.    the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

> i. the interest of the members of the class in individually controlling the prosecution or defense of separate actions;
> ii. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> iii. the desirability or undesirability of concentrating the litigation of the claims in a particular forum;
> iv. the difficulties likely to be encountered in the management of a class action ["superiority"], *see* FED. R. CIV. P. 23(b)(3).

Courts within the Third Circuit construe Rule 23 liberally. *Opperman v. Allstate N.J. Ins. Co.*, 2009 U.S. Dist. LEXIS 111733, at *9 (D.N.J. 2009) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)). When "considering whether certification is proper, courts refrain from inquiring into the merits of the action and accept the substantive allegations in the complaint as true." *Bizzarro v. Ocean Cnty.*, 2009 U.S. Dist. LEXIS 48354, at *25 (D.N.J. 2009); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011) ("[T]he legal viability of asserted claims is properly considered through a motion to dismiss under Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification process."). Although courts may assess the substantive merits of a party's claim if it overlaps with the elements for class certification, "[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing class certification. *Id.* (citing *Eisenberg*, 766 F.2d at 785).

### 2.    The Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a) requires that the class be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1); *Osgood v. Harrah's Ent., Inc.*, 202 F.R.D. 115, 122 (D.N.J. 2001); *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 382 (D.N.J. 1998). The purpose of the numerosity

requirement is to "limit the class action device to those cases in which the number of parties makes traditional joinder of parties unworkable." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 184 (D.N.J. 2003). Further, there is no requirement that the exact number of class members be immediately known, and the court "may accept common sense assumptions in finding that numerosity has been met." *In re Bulk [extruded] Graphite Prods. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 16619, at *14 (D.N.J. 2006) (quotations and citations omitted).

This District has held that "a proposed class of between at least 30 to 40 members will suffice to meet the numerosity requirement." *Epstein v. Moore*, 1988 U.S. Dist. LEXIS 5450, at *4 (D.N.J. 1988); *see also Colon v. Passaic Cnty.*, 2009 U.S. Dist. LEXIS 45151, at *8 (D.N.J. 2009) (citing *Stewart*, *supra*).

Numerosity is present in the instant action. A review of Defendants' documents reveals that there are 71 putative class members. As a result, the putative class is sufficiently large that joinder of all members is impracticable and undesirable. Accordingly, the numerosity requirement has been met.

### 3.    Commonality -- The Claims Of Each Member Of The Putative Class Arise From An Alleged Common Wrong

The second requirement is that common questions of law or fact predominate over any questions affecting individual members. The commonality requirement is satisfied "if the Named Plaintiff share at least one question of fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166 (2d Cir. 1987); *see also Bernhard v. TD Bank, N.A.*, 2009 U.S. Dist. LEXIS 92308, at *10 (D.N.J. 2009). The burden to meet the commonality requirement is "low" and "easily met in most cases because all that is required is one common issue." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, at *17 (D.N.J. 2011) (citing *Neal*, 43 F.3d at 56); *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) ("the threshold of commonality is not high").

In the present action, the claims of the Named Plaintiff and members of the putative class, arise from the same alleged wrongful conduct: Defendants' purported failure to pay for all hours worked, for failure to pay overtime compensation for hours worked over 40 in a week and/or for improper payment of paying the prevailing wage on publicly funded jobs.

The questions of law and fact common to all members of the putative class that predominate over questions affecting only individual class members include:

a.   Common Factual Questions:

i.   Whether Defendants maintained a policy and practice of paying its employees at the proper overtime rate for all hours worked in excess of forty (40) in a workweek; and

ii.  Whether Defendants would pay Plaintiffs at the proper prevailing wage rate for all hours worked on publicly funded jobs.

b.   Common Legal Questions:

i.   Whether Defendants complied with New Jersey State Labor Law pertaining to overtime compensation and unpaid wages, as well as the New Jersey State Law pertaining to the Prevailing Wage.

The commonality of these issues is evident. Each of these core issues involve the existence of a common nucleus of operative facts and the evidence required to prove these issues will be the same for all class members. Indeed, the questions of law and fact concerning Defendants' liability to all class members, such as whether class members were paid overtime compensation for all hours worked over 40 each week, and whether all class members were paid at the proper prevailing wage rate for all work performed on publicly funded jobs, are not merely common questions but are *identical* questions. The harms which the Named Plaintiff has allegedly suffered in this case are identical to the harms allegedly suffered by each and every member of the class – namely that they were allegedly all not paid as

required by the applicable statutes. As such, Plaintiff has satisfied the commonality pre-requisites of Rule 23.

**B.      Predominance**

Predominance is satisfied when "the issues common to the class predominate over individual issues . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311. Here, all of the class members allegedly suffered from Defendant's systematic failure to pay overtime compensation, as well as the proper prevailing wage rate. The issue of whether class members were supposed to be paid overtime for working more than 40 hours in a week is "about the most perfect question[] for class treatment." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *24 (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *see also Singleton v. First Student Mgmt. LLC*, 2014 U.S. Dist. LEXIS 108427, at *13 (D.N.J. 2014) (predominance found in wage action where class members were subject to the same time-keeping policies and were in turn not properly compensated). This analysis applies to prevailing wage rate violations as well. In addition, where common issues which determine liability predominate, calculating damages on an individual basis does not prevent an otherwise valid certification. *Schwartz v. Avis Rent a Car Sys., LLC*, 2014 U.S. Dist. LEXIS 121322, at *22 (D.N.J. 2014) (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000)).

In the present case, Plaintiff alleges that Defendants are statutorily liable for failing to pay Named Plaintiff and other members of the putative class for all hours worked, overtime compensation for hours worked over 40 each week, as well as Defendants' failure to pay at the proper prevailing wage rate for all hours worked on publicly funded jobs. Defendants' purported practice of failing to pay these required wages had an allegedly common impact on all class members and common impact on the liability of Defendants. These common issues clearly constitute a predominant aspect of the claims that the Plaintiff and putative class would have to prove.

**1.      The Named Plaintiff's Claims Are Typical Of The Claims Of The Putative Class**

Rule 23(a) requires that the Named Plaintiff's claims be "typical" of the proposed class. The Third Circuit has stated the proper considerations for assessing the typicality requirement are:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Courts have recognized that "the concepts of commonality and typicality are broadly defined and tend to merge." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citations omitted). Importantly, the typicality requirement "does not mandate that all putative class members share identical claims," and "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to claims of the class members, and if it is based on the same legal theory." *Id.*

In this case, the Named Plaintiff's claims are typical of the claims of the members of the putative class. Plaintiffs allege that the Named Plaintiff and the putative class members (1) were employed by Defendant; (2) were paid on an hourly basis; (3) were they paid for all hours worked; (4) were not paid overtime when they worked over 40 hours in a week; and (5) were not paid at the proper prevailing wage rate for the hours worked on publicly funded jobs. Named Plaintiff, like all putative class members, is seeking the exact same relief pursuant to a singular cause of action: allegedly unpaid overtime, unpaid wages, and prevailing wage rate compensation.

Accordingly, the claims of the Named Plaintiff and all other members of the putative class arise from the same alleged conduct of Defendant and are based on the same legal theory – that Defendants purportedly breached its statutory wage obligations. Typicality is present.

**2.    The Named Plaintiff Will Fairly And Adequately Protect The Interests Of The Class**

Rule 23(a)(4) requires that the Named Plaintiff be in a position to adequately protect the interests of the members of the class. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified, and (2) whether any conflict or antagonistic interests exist between the Named Plaintiff and the class members. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

Here, the Plaintiff is represented by counsel who are very experienced in class actions, labor and employment law, and wage cases in particular, and have demonstrated they are qualified, experienced and generally able to conduct the proposed litigation class members in cases such as this one. In fact, Plaintiff's counsel has represented classes that were certified in cases similar to this in both state and federal courts. These cases include *Bulba v. Tunstall Holdings, LLC, et.al.*, 14-00746 (E.D.N.Y. May 26,2015); *Davis, et al. v. Essex Cnty.*, 14-cv-01122 (CCC)(JNC) (N.J. Dec. 1, 2015); *Scales v. We R Wireless, Inc., et.al.*, 14-cv-03322 (D.N.J. Nov. 2, 2016); *Cirillo v. Patriot Elec. Corp.*, 15-cv-03770 (E.D.N.Y. May 17, 2016); *Hebert, et.al. v. Atl. Cnty.*, 13-cv-04170 (D.N.J. Dec. 7, 2015); *Cabrera v. Penn-Del Baking Distribs., Inc., et.al.*, 13- cv-4805 (D.N.J. May 26, 2015); *Cruz v. Majestic Cleaning*, Index No. 511791/2017 (NYSCEF, Kings County); *Perez v. Ames Goldsmith*, MID-L-005291-17 (NJ Super. Law Div. 2018); *Rodriguez v. Parade Mgmt. Corp, et al.*, 19-cv-00223 (ES) (SCM) (D.N.J. Dec. 7, 2020). *Friscia v. Doherty Enter., Inc., d/b/a Panera Bread Co.*, Index No. 16-cv-3754 (D.N.J. Jun. 26, 2018); *Siyam v. SS&C*, 19-cv-18535 (MAS) (DEA) (D.N.J. July 28, 2020).

In the present case, Named Plaintiff wishes to represent his fellow co-workers in a collective attempt to the receive wages allegedly owed to them for the many hours of work that they performed for Defendants, and shares that common interest with the putative class. Therefore, there is no basis to question the adequacy of representation in this matter.

**3.      A Class Action Is Superior To Other Available Methods**

Fed R. CIV. P. 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy."  In addition, Rule 23(b)(3) requires for Courts to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3).  Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . . ."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

In the instant matter, the class action device is superior to any other method for the fair and efficient adjudication of the issues before this Court. Given the expense of litigation and the relatively small size of the numerous individual claims, many workers would be unable to pursue redress for their claims absent class certification. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Accordingly, a class action is not only superior but, indeed, the only practical method of adjudication of obtaining relief for the members of the class.

Here, resolving the common issues on a class-wide basis will create uniform resolution of the issues under state and federal law, and achieve judicial economy, convenience and fairness to all parties. Accordingly, Plaintiff's New Jersey Labor Law claims associated with this action should be certified as a class action for settlement purposes only pursuant to Rule 23.

**C.      The FLSA Collective Should be Certified for Settlement Purposes Only**

This case is also appropriate for certification for settlement purposes under the FLSA, which provides that an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b). Satisfying the more stringent requirements of Rule 23 qualifies the class to be certified as a collective action. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167 n.68 (E.D. Pa.

2011). Courts in the Third Circuit apply the so-called *Lusardi* factors to certification of an FLSA opt-in class. These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *48 (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988)). "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing" as "there is little difference between the two approaches." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *49 (internal quotation marks and brackets omitted).

Plaintiff contends that the conduct of Defendants being challenged in the action is common to all the class members and not based on "disparate factual and employment settings," nor subject to defenses that "appear to be individual to each plaintiff." Furthermore, the procedural and fairness considerations will be satisfied through due process considerations set forth in the Settlement Stipulation; the putative collective members will receive notice of the settlement, which will include, among other things, an explanation of how the settlement funds will be distributed and how the collective members may object to the settlement. Thus, as the *Lusardi* factors are met, the FLSA s should be certified for settlement purposes.

**D.    Applicable Case Law Supports that the Action Be Certified for Settlement Purposes Only.**

There are numerous other examples of collective actions and class action status being granted in cases seeking recovery of allegedly unpaid or underpaid wages. *See, e.g.*, *Deangelis v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 191 (D.N.J. 2014) (court certified class action brought on behalf of casino dealers who were not paid for their attendance to meetings required by the employer); *Singleton v. First Student Mgmt. LLC*, 2014 U.S. Dist. LEXIS 108427, at *2 (D.N.J. 2014) (court certified class of drivers

and aides pursuant to Rule 23); *Goldman v. Radioshack Corp.*, 2005 U.S. Dist. LEXIS 8742, at *1 (E.D. Pa. 2005) (court certified class pursuant to Rule 23 to workers who claimed they were not paid overtime compensation); *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. 2010); *Velez v. Majik Cleaning Serv., Inc.*, 2005 WL 106895 (S.D.N.Y. 2005) (court granted class certification pursuant to Rule 23 to past and present employees of defendant who performed residential and commercial cleaning services); *see also Grenawalt v. AT&T Mobility, LLC*, 2014 U.S. Dist. LEXIS 139179, at *12 (S.D.N.Y. 2014); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999); *Barone v. Safway Steel Prods., Inc.*, 2005 U.S. Dist. LEXIS 17645, at *14 (E.D.N.Y. 2005).

In light of the numerous courts that have granted class certification in actions similar to the case at bar, and because Plaintiff contends that he has met the requirements of Rule 23, this Court should grant class certification of this action for settlement purposes only.

## IV.   **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors compromise and settlement of class action suits. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir.2010) (noting the strong judicial policy in favor of settlements, particularly in the class action context) (internal quotation marks and citation omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); NEWBERG § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of the court's discretion.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Lucent Tech., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 641-42 (D.N.J. 2004) (noting that courts enjoy considerable discretion in evaluating and approving proposed settlements).  "[Courts] . . . owe[] deference to a settlement as the negotiated agreement of private parties. *Martina v. L.A. Fitness Int'l,*

*Inc.*, 2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013). Furthermore, as the Third Circuit has explained, "[s]ettlements are private contracts reflecting negotiated compromises. The role of a [court] is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) (citation omitted).

Preliminary approval requires only a "preliminary evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Bernhard v. TD Bank*, *N.A.*, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009). Preliminary approval is not binding and should be granted unless a proposed settlement is obviously deficient. *Mazon v. Wells Fargo Bank*, *N.A.*, No. CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011); *see Smith v. Prof'l Billing & Mgmt. Servs.*, 2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007) (noting that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason") (internal quotation marks and citation omitted).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A.    The Settlement Is Non-Collusive, Fair, Reasonable, And Adequate

In evaluating a class action settlement, courts in the Third Circuit generally consider the nine factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res.*, *Inc.*, 209 F.3d 43 (2d Cir. 2000)) ("*Girsh*").

Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," NEWBERG § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Girsh* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the SS&C to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157.

Similarly, "[t]o approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The bona fide dispute requirement is satisfied by a disagreement over the compensation due that is vigorously litigated. *See id.* If the proposed settlement reflects a "reasonable compromise of disputed issues," the court should approve the settlement. *Lynn's*, 679 F.2d at 1354; *accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52. In evaluating whether an FLSA settlement is fair and reasonable to employees, courts in the Third Circuit apply the same *Girsh* factors used to determine the fairness of a Rule 23 class action settlement. *Clarke v. Flik Int'l Corp.*, 2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020). All of the *Girsh* factors weigh in favor of approval of the Settlement, and certainly in favor of preliminary approval.

**B.    Litigation Through Trial Would Be Complex, Costly, And Long (*Girsh* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Ehrheart*, 609 F.3d at 595.

Further litigation here would cause additional expense and delay. Plaintiff would likely file a motion for conditional certification of a class, which would involve extensive briefing. Thereafter, there would be protracted discovery, including innumerable depositions. And, depending on the outcome of the motion for conditional certification, which is liberally granted by Court, the Plaintiff would ultimately likely file a motion for class certification, and Defendants would likely file a motion to decertify the collective action.  In addition, the Parties likely would file cross-motions for summary judgment.  If the Court were to deny the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Girsh* factor weighs in favor of approval.

**C.    The Reaction Of The Class Has Been Positive (*Girsh* Factor 2)**

Notice of the settlement and its details have not yet been issued to the Class. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object. At this stage in the process, the Named Plaintiff and another FLSA opt-in collective members have expressed approval of the settlement.

### D. Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (*Girsh* Factor 3)

The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.

The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. They also researched Defendants' likely affirmative defenses. After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, receiving documents resultant from OPRA requests, interviewing and obtaining declarations from Plaintiff and the Opt-in Plaintiff, analyzing all data and creating several damage models in preparation for settlement discussions and an eventual mediation. This factor favors preliminary approval. *See Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 438 (D.N.J. 2009) (finding that "[b]ased upon the discovery and review and pretrial preparation, Class Counsel was able to evaluate the substantial time and expense that would be required to prosecute the case further and realized that appeals would be likely even in the event of a successful resolution of any claims—individual or class"); *see also Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

### E. Plaintiffs Would Face Real Risks If The Case Proceeded (*Girsh* Factors 4 And 5)

Although Plaintiffs' Counsel believe their case is strong, it is subject to considerable risk. While Plaintiff is confident of the outcome of a Motion for Conditional Certification of a class under the FLSA, there is still the chance that the Court could rule against Plaintiffs at the completion of discovery on a motion for decertification or summary judgment, or at trial on the merits.

A trial on the merits would involve risks to the Parties. To the extent a class is certified under Rule 23, the class will be comprised of present and former employees, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiffs would have to overcome Defendants' legal and factual defenses. Defendants assert that class members were appropriately paid, and most if not all of the Plaintiffs worked less hours than claimed on both private and public jobs.

While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, this would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### F.    Risks Involved In Maintaining The Class Through Trial (*Girsh* Factor 6)

Defendants would most likely oppose Plaintiffs' application for Rule 23 class certification of the New Jersey Prevailing Wage Act claims on the grounds that Plaintiffs' individualized circumstances were so varied that class certification would prove impractical. Moreover, even if Plaintiffs were to succeed on the Rule 23 motion, Defendants would likely seek appeal of the Court's determination. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

### G.    Defendants' Ability To Withstand A Greater Judgment Is Not Determinative (*Girsh* Factor 7)

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014). In the instant matter, throughout the pendency of this action, Defendants have contended that settlement would be difficult because of their uncertain future revenues . Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

**H.    The Settlement Fund Is Substantial, Even In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Girsh* Factors 8 And 9)**

Defendants have agreed to settle this case for a substantial sum. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed on a motion to certify the class, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "require[s] the court to consider whether proposed settlement falls within range of reasonableness in light of best possible recovery and attendant risks posed by litigation[.]" *Weber*, 262 F.R.D. at 446. "The settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial." *See Lenahan v. Sears*, *Roebuck & Co.*, No. CIV. 02-0045, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006) *aff'd*, 266 F. App'x 114 (3d Cir. 2008). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Id.* at *16 (approving a $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial); *see also Singleton*, 2014 WL 3865853, at *7 (approving a settlement of 40% of the estimated best possible outcome of the class action).

Here, the settlement provides much more than "a fraction of the potential recovery." Indeed, the amounts to be paid under the settlement realistically reflect a significant portion of the purported damages alleged by the Class. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. The *Girsh* factors weigh in favor of issuing preliminary approval of the settlement.  In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

24

representatives or segments of the class and falls within the range of possible approval," the Court should grant preliminary approval. *Mazon*, 2011 WL 6257149, at *1.

## V.    THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The proposed Notice in the instant case satisfies the requisite legal elements.  First, it explains the nature of the pending litigation.  Second, the Notice apprises Settlement Class members of the pendency of settlement and informs them about the material settlement terms, including what class members "give up" by participating in the settlement and how payments are calculated and distributed. The Notice informs class members of the method in which their damages are calculated. Thereby, each putative class member understands that the tenure of his or her tenure effects the amount of their recover based upon the total potential recovery. The Claim Form also provides the relevant deadlines and, along with the Notice, the consequences for failing to submit a proper Claim Form.

The Proposed Notice of Class and Collective Action Settlement ("Notice Form") annexed to the Settlement as Exhibit A complies with due process and FED. R. CIV. P. 23.  Notice must provide:

> [T]he best notice practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort. The
> notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)   the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the
>           member so desires;
>
> (v)     that the court will exclude from the class any member who requests
>           exclusion;
>
> (vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

The proposed Notice in the instant case satisfies the requisite legal elements.  First, it explains the nature of the pending litigation.  Second, the Notice apprises Settlement Class members of the pendency of settlement and informs them about the material settlement terms, including what class members "give up" by participating in the settlement and how payments are calculated and distributed. The Notice informs class members of the method in which their damages are calculated. Thereby, each putative class member understands that the tenure of his or her tenure effects the amount of their recover based upon the total potential recovery. The Claim Form also provides the relevant deadlines and, along with the Notice, the consequences for failing to submit a proper Claim Form.

The Settlement provides that the Notice will be mailed by the Claims Administrator to the last known address of each Class Member within fourteen (14) days of the entry of the Preliminary Approval Order by the court. The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing. As discussed above, the Notice Form contains information about how to exclude oneself or object to the settlement. Class Members will have until the end of the Claim Period—forty-five (45) from the date of mailing—to submit an exclusion request, or to object to the settlement.[2] Arden will send Settlement Checks to the Participating Class Members within twenty (20) days after the Effective Date.

## VI.    <u>A FINAL APPROVAL HEARING SHOULD BE SCHEDULED</u>

The Court should schedule a final approval hearing to determine whether final approval of the Settlement is proper.  The final approval hearing will provide a forum to explain, describe or challenge

---

[2] Except for Class Members whose Notice Packages were re-mailed, in which case those Class Members have the longer of forty-five (45) days from mailing or twenty (20) days after the re-mailing.

the terms and conditions of the Settlement, including fairness, adequacy and reasonableness of the Settlement.

At that time, Class Counsel will present their application for their fees pursuant to FED R. CIV. P. 23(h) as well as for the proposed Service Payments to the Class Representatives. Accordingly, Plaintiffs request that the Court schedule the final approval hearing expeditiously after the end of the Claim Period, as required by 28 U.S.C. § 1715(d).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order (1) granting preliminary approval of the Settlement, (2) certifying the settlement class/collective for settlement purposes only pursuant to FED. R. CIV. P. 23 and 29 U.S.C. § 216(b), and (3) approving the Notice of Proposed Class Action Settlement and Claim and Release Form.

**JAFFE GLENN LAW GROUP, P.A.**

/s/ Andrew I. Glenn
Andrew I. Glenn, Esquire
Jodi J. Jaffe, Esquire
300 Carnegie Center, Suite 150
Princeton, NJ 08540
Telephone: (201) 687-9977
*Attorney for Plaintiffs*

**LITTLER MENDELSON**

/s/ Lauren Marcus
Lauren J. Marcus, Esq.
One Newark Center, 8th Floor.
Newark, NJ 07102
Telephone: (973) 848-4700
*Attorneys for the Defendants*